UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BRIAN VUKADINOVICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No.: 2:02-CV-472 JVB |
| | ) |
| GRIFFITH PUBLIC SCHOOLS, | ) |
| GRIFFITH PUBLIC SCHOOLS BOARD OF | ) |
| TRUSTEES, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

**A. Background**

This is the first of three orders regarding the Defendants' Motion for Summary Judgment (DE 129).[1] This order relates to Plaintiff Brian Vukadinovich's claims against Defendants Griffith Public Schools and Griffith Public Schools Board of Trustees. Also before the court is a fully briefed motion for judicial notice (DE 165).

**B. Vukadinovich's Claims**

Vukadinovich filed this action on November 26, 2002, alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 *et seq*. After various lengthy procedural delays, including a monetary sanction imposed by the Court of Appeals for the Seventh Circuit, which Vukadinovich eventually paid, the motion for summary judgment is ripe

---

[1]There are six defendants in this case: Griffith Public Schools, Griffith Public Schools Board of Trustees, Crown Point Community School Corporation, Crown Point Community School Corporation Board of Trustees, School City of Hammond, School City of Hammond Board of Trustees. Although the Griffith, Crown Point, and Hammond entities are not related, they have been represented in this lawsuit by the same counsel and have filed a single motion for summary judgment, wherein each claims separate grounds for prevailing against Vukadinovich. For the sake of clarity, the Court will rule on each entity's contentions in separate orders.

for review.

Vukadinovich alleges that he had an application for employment as a teacher on file with Griffith for the 2000–2001 school year. Vukadinovich further alleges that on September 30, 2002, he learned that Griffith had a teaching position vacancy in Vukadinovich's area of industrial technology for the 2000–2001 and 2001–2002 school years. He insists that he was qualified for this position, but instead of hiring him, Griffith hired a younger candidate, Andrew Oswalt, for the 2000–2001 school year.

Vukadinovich contends that Oswalt had no experience as a high school teacher, had neither a Bachelor of Science degree nor the appropriate license at the time he was hired, and that Vukadinovich's age, forty-eight at the time, was a motivating factor in the decision to reject his application and hire a younger, less qualified candidate.

## C. Summary Judgment Standard

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, 477 U.S. 242, 249–50* (1986).

**D. Facts**

**(1)** *Vukadinovich's Background*

Vukadinovich's was born on December 13, 1951. (Vukadinovich Dep. at 4.) He received his Bachelor of Science degree from Indiana State University in 1974, and his Master's degree in Industrial Arts Education from ISU in 1981. (Vukadinovich Dep. at 5). He was originally licensed to teach physical education and health, driver education, and graphic arts. In 1981 he

was granted a "life license" by the State of Indiana in Industrial Arts and Driver and Traffic Safety Education. In 1997 Vukadinovich attended a six-day course, Technology Education Inservice Workshop, which qualified him to teach technology courses in Indiana.

Vukadinovich has held the following teaching positions since earning his Bachelor of Science degree from Indiana State University in 1974:

1. Westville Schools (now referred to as M.S.D. of New Durham Township Schools) 1976-1981. (Vukadinovich Dep. at 6).

2. Hobart High School 1981-1982. (Vukadinovich Dep. at 21).

3. Substitute teacher with Michigan City Area Schools for about one year 1981-1982. (Vukadinovich Dep. at 8, 9).

4. Teacher with Michigan City Area Schools 1982-1987. (Vukadinovich Dep. at 9). Vukadinovich worked at a law firm as a paralegal for about one year after being terminated from Michigan City Area Schools. (Vukadinovich Dep. at 9).

5. Diocese of Gary, Holy Angel School 1988, for about 4-5 years. (Vukadinovich Dep. at 10). Vukadinovich taught English, Religion, and Social Studies for grades 1-8, but was not licensed to do so. (Vukadinovich Dep. at 17).

6. Substitute teacher with East Chicago Schools for about one semester. (Vukadinovich Dep. at 10).

7. Teacher of industrial technology, North Newton School Corporation 1996-2001. (Vukadinovich Dep. at 10).

8. Hanover Community School Corporation where Vukadinovich is in his 5th year as a teacher. (Vukadinovich Dep. at 11).

Vukadinovich has a history of tumultuous relationships with his school employers, as well as near constant litigation with employers and others. Vukadinovich's contract as a teacher was terminated at Westville (Vukadinovich Dep. at 14), Hobart, Michigan City Area Schools (Vukadinovich Dep. at 16), and North Newton Schools (Vukadinovich Dep. at 19). The

4

termination of his contract from Michigan City Area Schools grew out of an arrest for driving while intoxicated, being found guilty of this charge, and subsequently serving a jail sentence. The termination of his contract at North Newton was related to a long series of serious acts of defiance and insubordination on Vukadinovich's part. As a result of his terminations, Vukadinovich filed lawsuits against Westville, Michigan City, and North Newton. These lawsuits involved significant litigation, including, in the case of Michigan City Area Schools, two lawsuits in two different State courts, appeals to the Indiana Court of Appeals and the Indiana Supreme Court, as well as actions in Federal court including the 7th Circuit Court of Appeals. (Vukadinovich Dep. at 4, 16, 19). Ultimately, the school corporations prevailed in all of these lawsuits. (Vukadinovich Dep. at 15, 19, 23). Significant publicity and newspaper articles accompanied each of these lawsuits. (Vukadinovich Dep. at 33).

Additionally, Vukadinovich admits to being arrested at least three times, in 1981, 1983, 1985. (Vukadinovich Dep. at 23). He spent thirty days in jail for the 1985 arrest. (Vukadinovich Dep. at 24). Vukadinovich sued the Westville Police (Vukadinovich Dep. at 25); the Valparaiso Police (Vukadinovich Dep. at 26); and the Porter County Sheriff (Vukadinovich Dep. at 27).

(**2**) *Vukadinovich's Job Application with Griffith Public Schools*

Griffith has had at all pertinent times, a Board policy in effect supporting equal employment opportunity. Additionally, Griffith had a policy concerning employment of professional staff which states in part that "[w]herever possible, positions shall be filled by properly licensed professionals."

On July 14, 2000, Vukadinovich sent a letter to Griffith expressing an interest in any industrial technology teaching opening. There was an opening for an industrial technology teacher for the 2001–2002 school year. (DE 131-13.)

The notice of vacancy states that all applicants must have a valid Indiana Teacher's License. (DE 131-14.) Vukadinovich's age is not noted anywhere on the application. The Defendants assert that Vukadinovich did not answer truthfully on his application regarding the termination of his employment at Michigan City Area Schools, Westville, or Hobart.

When Vukadinovich applied to the Griffith school, Linda Einsele was the principal of Griffith High School. Part of her job was to review applications, interview, and recommend a candidate for this teaching position to the Superintendent of Schools, William Gall. It was then Gall's responsibility to make a recommendation to the Board of School Trustees, which had the final authority for hiring any employees. Einsele received about six applications for this opening and interviewed three of the applicants. One of the applications received was Vukadinovich's, but Einsele chose not to interview him because of his tumultuous employment history:

> I decided not to interview Mr. Vukadinovich or consider him
> for the position based upon my knowledge and understanding that
> Mr. Vukadinovich had been recently in a dispute with the school
> system that employed him, that he had or was intending to file suit
> against them and that he was having a public dispute with them
> that had turned very adversarial and which included several public
> statements by Mr. Vukadinovich, in print, against his employer.

(DE 131-15.)

Einsele recommended to the Superintendent that Andrew Oswalt be hired for the position. At this time Oswalt did not hold a teaching certificate in industrial technology, but had

6

completed all requisite course work for such certification with the exception of student teaching and one classroom management course. Since Oswalt did not have a teaching certificate, the Superintendent applied on August 25, 2000, to the Indiana Professional Standards Board for a limited license for Oswalt. A limited license is granted by the State of Indiana to those persons who hold a Bachelor's Degree, but are not yet certified in a particular content area. When granted by the State, a limited license is as valid as a regular license. As part of the application process for a limited license, the Superintendent must certify that the particular position cannot be filled with qualified licensed personnel.

School began on August 21, 2000, and Oswalt was granted a contract. During this period of time, Oswalt was completing his student teaching and his final course work. His student teaching was part of his regular classroom work at Griffith; he was overseen by a licensed teacher.

The Indiana Professional Standards Board did not reply to the application for a limited license until November 21, 2000. At that time, the limited license application was denied because Oswalt had not yet received his Bachelor's Degree. Meanwhile school continued. On December 16, 2000, Oswalt completed his student teaching and all requirements for the granting of his Bachelor's Degree. Thereafter, a Teacher's License in Industrial Technology was granted on February 28, 2001.

Oswalt completed the 2000-2001 school year and then resigned on August 13, 2001. Ryan "Bo" Radtke was hired to succeed Oswalt for the 2001–2002 school year. Radtke was licensed in industrial technology. Neither Oswalt's nor Radtke's application contained any information regarding age or date of birth.

**E. Discussion**

**(1) Legal Standard**

The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. §623(a)(1). This prohibition applies to individuals who are at least forty years of age. 29 U.S.C. §631(a). In order to prevail under the ADEA, Vukadinovich must show that age was "but-for" cause of the Griffith's failure to hire him. *Gross v. FBL Fin. Servs.*, 129 S.Ct. 2343, 2351 (2009).

The ultimate question in an ADEA case is "whether the same events would have transpired if the employee would have been younger than 40 and everything else had been the same." *Taylor v. Canteen Corp.*, 69 F.3d 773, 779 (7th Cir. 1995); *see Adreane v. First Colonial Bankshares Corp.*, 98 F.3d 297, 301 (7th Cir. 1996) (stating "the relevant inquiry is whether age tipped the balance, that is, whether age was a 'but for' cause of the decision to fire [not hire] the plaintiff").

"A plaintiff can establish age discrimination through direct evidence, or more commonly through the burden shifting method of *McDonnell Douglas Corp. v. Green*, 311 U.S. 792 (1973)." *Beatty v. Wood*, 2004 F.3d 713, 716 (7th Cir. 2000). "Under that approach, [plaintiff] must first demonstrate a prima facie case of discrimination by a preponderance of the evidence." *Beatty*, 204 F.3d at 717. That is, plaintiff must show that (1) he was a member of the protected group; (2) he sought a position for which he was qualified; (3) he was not hired; and (4) a substantially younger person who was similarly situated was hired. *Zaccagnini v. Charles Levy Circ. Company*, 338 F.3d 672, 675 (7th Cir. 2003); *Sembos v. Phillips Components*, 376 F.3d 696, 700 (7th Cir. 2004).

If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to offer legitimate non-discriminatory reasons for the challenged employment action, and if the employer contends its action was motivated by a reason other than age, the burden then shifts to the plaintiff to prove that the asserted reason was a pretext for discrimination. *Adreane v. First Colonial Bankshares Corp*., 154 F.3d 389, 393 (7th Cir. 1998). "There are two methods of showing pretext: 'Pretext may be established directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible.'" *Wolf v. Buss (America) Inc*., 77 F.3d 914, 919 (7th Cir. 1996) (quoting *Sarsha v. Sears Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993)). In the absence of direct evidence pretext may be shown by evidence that (1) the proffered reason is factually baseless; (2) the proffered reason was not the actual motivation for the employment action; (3) the proffered reason was insufficient to motivate the employment action. *See Wolf v. Buss*, 77 F.3d 914, 920; *Adreane*, 154 F.3d at 895.

It is not sufficient for Vukadinovich to show that the employer acted incorrectly or undesirably; instead Vukadinovich must show that the employer did not honestly believe in the reason given for the employment action. *Guinan* at 851. Even though the burden of production shifts under *McDonnell* and its progeny, the ultimate burden remains with Vukadinovich to prove that the Defendant intentionally discriminated against Vukadinovich on the basis of his age. *Denise v. Dominic's Finer Foods Inc.*, 99 F.3d 860, 864 (7th Cir. 1996).

**(2) Analysis**

For brevity's sake, the Court will assume that Vukadinovich is able to establish a prima facie case. Nevertheless, his claim against Griffith fails because he is unable to rebut Griffith's stated reason for not hiring him. Griffith claims that Ms. Einsele decided not to interview Vukadinovich because she knew about his public disputes with the school systems that previously employed him and that he was intending to sue his former employer. Griffith, therefore, has stated a legitimate reason, but Vukadinovich has not offered any admissible evidence to show that this reason is a mere pretext for age discrimination.

In his rebuttal, Plaintiff argues only that he was more qualified than Oswalt because Oswalt did not have a teaching license but he did. Be that as it may, this does not show that Ms. Einsele did not honestly believe that Vukadinovich was not suitable for the position because of his tumultuous and well-publicized history of problems with his employers. Nor does the fact that Oswalt was unable to obtain a teaching license after he was hired prove that Griffith did not think that Oswalt was a better candidate than Vukadinovich. To rebut Griffith, Vukadinovich must present evidence that Griffith's reason is a mere pretext for age discrimination. *See McDonnell Douglas*, 411 U.S. 792; *Johnson v. Nordstrom Inc.*, 260 F.3d 727, 731–32 (7th Cir. 2001). The pretext inquiry does not focus on the wisdom of Griffith's decision, but only on whether the decision makers acted honestly and without discriminatory motivation: "[w]e do not ask whether the reason for the [action] was 'a correct business judgment' but whether the decision-makers honestly acted on that reason." *Crim v. Board of Education of School District #1*, 147 F.3d 535, 541 (7th Cir. 1998).

Vukadinovich lacks any such evidence as he is unable to show by admissible evidence

that the reasons given by Griffith were not the true basis for the decision not to hire him.[2]

Accordingly, summary judgment will be granted in favor of Griffith.

**F. Vukadinovich's Motion for Judicial Notice**

In his Motion for Judicial Notice, Vukadinovich wants the Court to take judicial notice of Judge Phillip Simon's decision in *Meyer v. The School Town of Highland*, 2:06-CV124 PPS (N.D. Ind. October 9, 2007). Vukadinovich misunderstands the purpose of judicial notice: "[t]he doctrine of judicial notice alleviates the necessity of introducing evidence to prove certain facts. It operates as a substitute for formal proof. *In re Snider Farms, Inc.*, 83 B.R. 977, 996 (Bkrtcy. N.D. Ind. 1988); *see also Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 895 (10th Cir. 1994) ("Judicial notice is when a judge recognizes the truth of certain facts, which from their nature are not properly the subject of testimony, or which are universally regarded as established by common knowledge."); Fed. R. Evid. 201. The Courts do not take judicial notice of legal issues. Accordingly, Vukadinovich's Motion for Judicial Notice will be denied.

---

[2]Plaintiff also testified during his deposition that Superintendent Gall's Secretary told Plaintiff that Gall knew Griffith was violating age discrimination laws by not hiring him but that he did not care because he was going to retire soon. Plaintiff believes that such evidence is admissible under Federal Rule of Evidence 801(d)(2)(D) as a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. However, Plaintiff has not presented sufficient facts showing that this exception applies, or that the statement falls outside the hearsay exception under any other provision of the Federal Rules of Evidence.

**F. Conclusion**

The Court denies Vukadinovich's Motion for Judicial Notice (DE 165).

The Court grants summary judgment in favor of Defendants Griffith Public Schools and Griffith Public Schools Board of Trustees and against Vukadinovich. The Court will address the motions from the remaining defendants in separate orders. *See* Fn.1 *supra*.

SO ORDERED on March 25, 2010.

s/ Joseph Van Bokkelen  
Joseph Van Bokkelen  
United States District Judge